# ILLINOIS *v.* RODRIGUEZ

No. 88–2018.   Argued March 20, 1990—Decided June 21, 1990

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, and KENNEDY, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN and STEVENS, JJ., joined, *post*, p. 189.

*Joseph Claps*, First Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were *Neil F. Hartigan*, Attorney General, *Robert J. Ruiz*, Solicitor General, *Terence M. Madsen*, Assistant Attorney General, *Cecil A. Partee*, *Renée Goldfarb*, and *Theodore Fotios Burtzos*.

*Michael R. Dreeben* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr*, *Assistant Attorney General Dennis*, and *Deputy Solicitor General Bryson*.

*James W. Reilley* argued the cause for respondent. With him on the brief were *Christine P. Curran*, *Dianne Ruthman*, and *Rick Halprin*.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of California by *John K. Van de Kamp*, Attorney General, *Richard B. Iglehart*, Chief Assistant Attorney General, *John H. Sugiyama*, Senior Assistant Attorney General, and *Ronald S. Matthias* and *Clifford K. Thompson, Jr.*, Deputy Attorneys General; and for Americans for Effective Law Enforcement, Inc., et al. by *Gregory U. Evans, Daniel B. Hales, George D. Webster, Joseph A. Morris, Jack E. Yelverton, Fred E. Inbau, Wayne W. Schmidt, Bernard J. Farber*, and *James P. Manak*.

*Benjamin S. Waxman* and *Jeffrey S. Weiner* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

JUSTICE SCALIA delivered the opinion of the Court.

In *United States* v. *Matlock*, 415 U. S. 164 (1974), this Court reaffirmed that a warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of "unreasonable searches and seizures" if the officers have obtained the consent of a third party who possesses common authority over the premises. The present case presents an issue we expressly reserved in *Matlock*, see *id.*, at 177, n. 14: Whether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so.

I

Respondent Edward Rodriguez was arrested in his apartment by law. enforcement officers and charged with possession of illegal drugs. The police gained entry to the apartment with the consent and assistance of Gail Fischer, who had lived there with respondent for several months. The relevant facts leading to the arrest are as follows.

On July 26, 1985, police were summoned to the residence of Dorothy Jackson on South Wolcott in Chicago. They were met by Ms. Jackson's daughter, Gail Fischer, who showed signs of a severe beating. She told the officers that she had been assaulted by respondent Edward Rodriguez earlier that day in an apartment on South California Avenue. Fischer stated that Rodriguez was then asleep in the apartment, and she consented to travel there with the police in order to unlock the door with her key so that the officers could enter and arrest him. During this conversation, Fischer several times referred to the apartment on South California as "our" apartment, and said that she had clothes and furniture there. It is unclear whether she indicated that she currently lived at the apartment, or only that she used to live there.

The police officers drove to the apartment on South California, accompanied by Fischer. They did not obtain an arrest warrant for Rodriguez, nor did they seek a search warrant for the apartment. At the apartment, Fischer unlocked the door with her key and gave the officers permission to enter. They moved through the door into the living room, where they observed in plain view drug paraphernalia and containers filled with white powder that they believed (correctly, as later analysis showed) to be cocaine. They proceeded to the bedroom, where they found Rodriguez asleep and discovered additional containers of white powder in two open attaché cases. The officers arrested Rodriguez and seized the drugs and related paraphernalia.

Rodriguez was charged with possession of a controlled substance with intent to deliver. He moved to suppress all evidence seized at the time of his arrest, claiming that Fischer had vacated the apartment several weeks earlier and had no authority to consent to the entry. The Cook County Circuit Court granted the motion, holding that at the time she consented to the entry Fischer did not have common authority over the apartment. The Court concluded that Fischer was not a "usual resident" but rather an "infrequent visitor" at the apartment on South California, based upon its findings that Fischer's name was not on the lease, that she did not contribute to the rent, that she was not allowed to invite others to the apartment on her own, that she did not have access to the apartment when respondent was away, and that she had moved some of her possessions from the apartment. The Circuit Court also rejected the State's contention that, even if Fischer did not possess common authority over the premises, there was no Fourth Amendment violation if the police *reasonably believed* at the time of their entry that Fischer possessed the authority to consent.

The Appellate Court of Illinois affirmed the Circuit Court in all respects. The Illinois Supreme Court denied the State's petition for leave to appeal, 125 Ill. 2d 572, 537

N. E. 2d 816 (1989), and we granted certiorari. 493 U. S. 932 (1989).

## II

The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. *Payton* v. *New York*, 445 U. S. 573 (1980); *Johnson* v. *United States*, 333 U. S. 10 (1948). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see *Schneckloth* v. *Bustamonte*, 412 U. S. 218 (1973), or from a third party who possesses common authority over the premises, see *United States* v. *Matlock, supra,* at 171. The State of Illinois contends that that exception applies in the present case.

As we stated in *Matlock, supra,* at 171, n. 7, "[c]ommon authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes . . . ." The burden of establishing that common authority rests upon the State. On the basis of this record, it is clear that burden was not sustained. The evidence showed that although Fischer, with her two small children, had lived with Rodriguez beginning in December 1984, she had moved out on July 1, 1985, almost a month before the search at issue here, and had gone to live with her mother. She took her and her children's clothing with her, though leaving behind some furniture and household effects. During the period after July 1 she sometimes spent the night at Rodriguez's apartment, but never invited her friends there, and never went there herself when he was not home. Her name was not on the lease nor did she contribute to the rent. She had a key to the apartment, which she said at trial she had taken without Rodriguez's knowledge (though she testified at the preliminary hearing that Rodriguez had given her the key). On these facts the State has not established that, with respect to the South California apartment, Fischer had

"joint access or control for most purposes." To the contrary, the Appellate Court's determination of no common authority over the apartment was obviously correct.

## III

### A

The State contends that, even if Fischer did not in fact have authority to give consent, it suffices to validate the entry that the law enforcement officers reasonably believed she did. Before reaching the merits of that contention, we must consider a jurisdictional objection: that the decision below rests on an adequate and independent state ground. Respondent asserts that the Illinois Constitution provides greater protection than is afforded under the Fourth Amendment, and that the Appellate Court relied upon this when it determined that a reasonable belief by the police officers was insufficient.

When a state-court decision is clearly based on state law that is both adequate and independent, we will not review the decision. *Michigan* v. *Long*, 463 U. S. 1032, 1041 (1983). But when "a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law," we require that it contain a "'plain statement' that [it] rests upon adequate and independent state grounds," *id.*, at 1040, 1042; otherwise, "we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Id.*, at 1041. Here, the Appellate Court's opinion contains no "plain statement" that its decision rests on state law. The opinion does not rely on (or even mention) any specific provision of the Illinois Constitution, nor even the Illinois Constitution generally. Even the Illinois cases cited by the opinion rely upon no constitutional provisions other than the Fourth and Fourteenth Amendments of the United States Constitution. We conclude that the Appellate Court of Illinois rested its decision on federal law.

## B

On the merits of the issue, respondent asserts that permitting a reasonable belief of common authority to validate an entry would cause a defendant's Fourth Amendment rights to be "vicariously waived." Brief for Respondent 32. We disagree.

We have been unyielding in our insistence that a defendant's waiver of his trial rights cannot be given effect unless it is "knowing" and "intelligent." *Colorado* v. *Spring*, 479 U. S. 564, 574–575 (1987); *Johnson* v. *Zerbst*, 304 U. S. 458 (1938). We would assuredly not permit, therefore, evidence seized in violation of the Fourth Amendment to be introduced on the basis of a trial court's mere "reasonable belief"—derived from statements by unauthorized persons—that the defendant has waived his objection. But one must make a distinction between, on the one hand, trial rights that *derive* from the violation of constitutional guarantees and, on the other hand, the nature of those constitutional guarantees themselves. As we said in *Schneckloth:*

> "There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures." 412 U. S., at 241.

What Rodriguez is assured by the trial right of the exclusionary rule, where it applies, is that no evidence seized in violation of the Fourth Amendment will be introduced at his trial unless he consents. What he is assured by the Fourth Amendment itself, however, is not that no government search of his house will occur unless he consents; but that no such search will occur that is "unreasonable." U. S. Const., Amdt. 4. There are various elements, of course,

that can make a search of a person's house "reasonable"—one of which is the consent of the person or his cotenant. The essence of respondent's argument is that we should impose upon this element a requirement that we have not imposed upon other elements that regularly compel government officers to exercise judgment regarding the facts: namely, the requirement that their judgment be not only responsible but correct.

The fundamental objective that alone validates all unconsented government searches is, of course, the seizure of persons who have committed or are about to commit crimes, or of evidence related to crimes. But "reasonableness," with respect to this necessary element, does not demand that the government be factually correct in its assessment that that is what a search will produce. Warrants need only be supported by "probable cause," which demands no more than a proper "assessment of probabilities in particular factual contexts . . . ." *Illinois* v. *Gates*, 462 U. S. 213, 232 (1983). If a magistrate, based upon seemingly reliable but factually inaccurate information, issues a warrant for the search of a house in which the sought-after felon is not present, has never been present, and was never likely to have been present, the owner of that house suffers one of the inconveniences we all expose ourselves to as the cost of living in a safe society; he does not suffer a violation of the Fourth Amendment.

Another element often, though not invariably, required in order to render an unconsented search "reasonable" is, of course, that the officer be authorized by a valid warrant. Here also we have not held that "reasonableness" precludes error with respect to those factual judgments that law enforcement officials are expected to make. In *Maryland* v. *Garrison*, 480 U. S. 79 (1987), a warrant supported by probable cause with respect to one apartment was erroneously issued for an entire floor that was divided (though not clearly) into two apartments. We upheld the search of the apartment not properly covered by the warrant. We said:

> "[T]he validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. Here it unquestionably was. The objective facts available to the officers at the time suggested no distinction between [the suspect's] apartment and the third-floor premises." *Id.*, at 88.

The ordinary requirement of a warrant is sometimes supplanted by other elements that render the unconsented search "reasonable." Here also we have not held that the Fourth Amendment requires factual accuracy. A warrant is not needed, for example, where the search is incident to an arrest. In *Hill* v. *California*, 401 U. S. 797 (1971), we upheld a search incident to an arrest, even though the arrest was made of the wrong person. We said:

> "The upshot was that the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id.*, at 803–804.

It would be superfluous to multiply these examples. It is apparent that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be rea-

sonable. As we put it in *Brinegar* v. *United States*, 338 U. S. 160, 176 (1949):

> "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape. See *Archibald* v. *Mosel*, 677 F. 2d 5 (CA1 1982).*

---

*JUSTICE MARSHALL's dissent rests upon a rejection of the proposition that searches pursuant to valid third-party consent are "generally reasonable." *Post*, at 196. Only a warrant or exigent circumstances, he contends, can produce "reasonableness"; consent validates the search only because the object of the search thereby "limit[s] his expectation of privacy," *post*, at 198, so that the search becomes not really a search at all. We see no basis for making such an artificial distinction. To describe a consented search as a noninvasion of privacy and thus a nonsearch is strange in the extreme. And while it must be admitted that this ingenious device can explain why consented searches are lawful, it cannot explain why seemingly consented searches are "unreasonable," which is all that the Constitution forbids. See *Delaware* v. *Prouse*, 440 U. S. 648, 653–654 (1979) ("The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials"). The only basis for contending that the constitu-

*Stoner* v. *California*, 376 U. S. 483 (1964), is in our view not to the contrary. There, in holding that police had improperly entered the defendant's hotel room based on the consent of a hotel clerk, we stated that "the rights protected by the Fourth Amendment are not to be eroded . . . by unrealistic doctrines of 'apparent authority.'" *Id.*, at 488. It is ambiguous, of course, whether the word "unrealistic" is descriptive or limiting—that is, whether we were condemning as unrealistic all reliance upon apparent authority, or whether we were condemning only such reliance upon apparent authority as is unrealistic. Similarly ambiguous is the opinion's earlier statement that "there [is no] substance to the claim that the search was reasonable because the police, relying upon the night clerk's expressions of consent, had a reasonable basis for the belief that the clerk had authority to consent to the search." *Ibid.* Was there no substance to it because it failed as a matter of law, or because the facts could not possibly support it? At one point the opinion does seem to speak clearly:

> "It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent." *Id.*, at 489.

But as we have discussed, what is at issue when a claim of apparent consent is raised is not whether the right to be free of searches has been *waived*, but whether the right to be free of *unreasonable* searches has been *violated*. Even if one does not think the *Stoner* opinion had this subtlety in mind, the supposed clarity of its foregoing statement is immediately compromised, as follows:

---

tional standard could not possibly have been met here is the argument that reasonableness must be judged by the facts as they were, rather than by the facts as they were known. As we have discussed in text, that argument has long since been rejected.

"It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that *the police had any basis whatsoever to believe that* the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room." *Ibid.* (emphasis added).

The italicized language should have been deleted, of course, if the statement two sentences earlier meant that an appearance of authority could never validate a search. In the last analysis, one must admit that the rationale of *Stoner* was ambiguous—and perhaps deliberately so. It is at least a reasonable reading of the case, and perhaps a preferable one, that the police could not rely upon the obtained consent because they knew it came from a hotel clerk, knew that the room was rented and exclusively occupied by the defendant, and could not reasonably have believed that the former had general access to or control over the latter. Similarly ambiguous in its implications (the Court's opinion does not even allude to, much less discuss the effects of, "reasonable belief") is *Chapman* v. *United States*, 365 U. S. 610 (1961). In sum, we were correct in *Matlock*, 415 U. S., at 177, n. 14, when we regarded the present issue as unresolved.

As *Stoner* demonstrates, what we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry* v. *Ohio*, 392 U. S. 1, 21–22 (1968). If not, then war-

rantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

\*     \*     \*

In the present case, the Appellate Court found it unnecessary to determine whether the officers reasonably believed that Fischer had the authority to consent, because it ruled as a matter of law that a reasonable belief could not validate the entry. Since we find that ruling to be in error, we remand for consideration of that question. The judgment of the Illinois Appellate Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE STEVENS join, dissenting.

Dorothy Jackson summoned police officers to her house to report that her daughter Gail Fischer had been beaten. Fischer told police that Ed Rodriguez, her boyfriend, was her assaulter. During an interview with Fischer, one of the officers asked if Rodriguez dealt in narcotics. Fischer did not respond. Fischer did agree, however, to the officers' request to let them into Rodriguez's apartment so that they could arrest him for battery. The police, without a warrant and despite the absence of an exigency, entered Rodriguez's home to arrest him. As a result of their entry, the police discovered narcotics that the State subsequently sought to introduce in a drug prosecution against Rodriguez.

The majority agrees with the Illinois Appellate Court's determination that Fischer did not have authority to consent to the officers' entry of Rodriguez's apartment. *Ante,* at 181–182. The Court holds that the warrantless entry into Rodriguez's home was nonetheless valid if the officers reasonably believed that Fischer had authority to consent. *Ante* this page. The majority's defense of this position rests on a misconception of the basis for third-party consent searches. That

such searches do not give rise to claims of constitutional violations rests not on the premise that they are "reasonable" under the Fourth Amendment, see *ante*, at 183–184, but on the premise that a person may voluntarily limit his expectation of privacy by allowing others to exercise authority over his possessions. Cf. *Katz* v. *United States*, 389 U. S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"). Thus, an individual's decision to permit another "joint access [to] or control [over the property] for most purposes," *United States* v. *Matlock*, 415 U. S. 164, 171, n. 7 (1974), limits that individual's reasonable expectation of privacy and to that extent limits his Fourth Amendment protections. Cf. *Rakas* v. *Illinois*, 439 U. S. 128, 148 (1978) (because passenger in car lacked "legitimate expectation of privacy in the glove compartment," Court did not decide whether search would violate Fourth Amendment rights of someone who had such expectation). If an individual has not so limited his expectation of privacy, the police may not dispense with the safeguards established by the Fourth Amendment.

The baseline for the reasonableness of a search or seizure in the home is the presence of a warrant. *Skinner* v. *Railway Labor Executives' Assn.*, 489 U. S. 602 (1989). Indeed, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton* v. *New York*, 445 U. S. 573, 586 (1980). Exceptions to the warrant requirement must therefore serve "compelling" law enforcement goals. *Mincey* v. *Arizona*, 437 U. S. 385, 394 (1978). Because the sole law enforcement purpose underlying third-party consent searches is avoiding the inconvenience of securing a warrant, a departure from the warrant requirement is not justified simply because an officer reasonably believes a third party has consented to a search of the defendant's home. In holding otherwise, the majority ignores our longstanding view that "the informed and deliberate determina-

tions of magistrates . . . as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests." *United States* v. *Lefkowitz*, 285 U. S. 452, 464 (1932).

## I

The Fourth Amendment provides that "[t]he right of the people to be secure in their . . . houses . . . shall not be violated." We have recognized that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States* v. *United States District Court, Eastern District of Michigan*, 407 U. S. 297, 313 (1972). We have further held that "a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions." *Coolidge* v. *New Hampshire*, 403 U. S. 443, 474 (1971). Those exceptions must be crafted in light of the warrant requirement's purposes. As this Court stated in *McDonald* v. *United States*, 335 U. S. 451 (1948):

> "The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals." *Id.*, at 455–456.

The Court has tolerated departures from the warrant requirement only when an exigency makes a warrantless search imperative to the safety of the police and of the community. See, *e. g.*, *id.*, at 456 ("We cannot be true to that

constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative"); *Warden* v. *Hayden*, 387 U. S. 294 (1967) (hot pursuit); *Chimel* v. *California*, 395 U. S. 752 (1969) (interest in officers' safety justifies search incident to an arrest); *Michigan* v. *Tyler*, 436 U. S. 499, 509 (1978) ("compelling need for official action and no time to secure a warrant" justifies warrantless entry of burning building). The Court has often heard, and steadfastly rejected, the invitation to carve out further exceptions to the warrant requirement for searches of the home because of the burdens on police investigation and prosecution of crime. Our rejection of such claims is not due to a lack of appreciation of the difficulty and importance of effective law enforcement, but rather to our firm commitment to "the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law." *Mincey, supra,* at 393 (citing *United States* v. *Chadwick*, 433 U. S. 1, 6–11 (1977)).

In the absence of an exigency, then, warrantless home searches and seizures are unreasonable under the Fourth Amendment. The weighty constitutional interest in preventing unauthorized intrusions into the home overrides any law enforcement interest in relying on the reasonable but potentially mistaken belief that a third party has authority to consent to such a search or seizure. Indeed, as the present case illustrates, only the minimal interest in avoiding the inconvenience of obtaining a warrant weighs in on the law enforcement side.

Against this law enforcement interest in expediting arrests is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman* v. *United States*, 365 U. S. 505, 511 (1961). To be sure, in some cases in which police officers reasonably rely on a

third party's consent, the consent will prove valid, no intrusion will result, and the police will have been spared the inconvenience of securing a warrant. But in other cases, such as this one, the authority claimed by the third party will be false. The reasonableness of police conduct must be measured in light of the possibility that the target has not consented. Where "[n]o reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate," the Constitution demands that the warrant procedure be observed. *Johnson* v. *United States*, 333 U. S. 10, 15 (1948). The concerns of expediting police work and avoiding paperwork "are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement." *Ibid.* In this case, as in *Johnson*, "[n]o suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction . . . . If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required." *Ibid.*

Unlike searches conducted pursuant to the recognized exceptions to the warrant requirement, see *supra*, at 191–192, third-party consent searches are not based on an exigency and therefore serve no compelling social goal. Police officers, when faced with the choice of relying on consent by a third party or securing a warrant, should secure a warrant and must therefore accept the risk of error should they instead choose to rely on consent.

## II

Our prior cases discussing searches based on third-party consent have never suggested that such searches are "reasonable." In *United States* v. *Matlock*, this Court upheld a warrantless search conducted pursuant to the consent of a

third party who was living with the defendant. The Court rejected the defendant's challenge to the search, stating that a person who permits others to have "joint access or control for most purposes . . . assume[s] the risk that [such persons] might permit the common area to be searched." 415 U. S., at 171, n. 7; see also *Frazier* v. *Cupp*, 394 U. S. 731, 740 (1969) (holding that defendant who left a duffel bag at another's house and allowed joint use of the bag "assumed the risk that [the person] would allow someone else to look inside"). As the Court's assumption-of-risk analysis makes clear, third-party consent limits a person's ability to challenge the reasonableness of the search only because that person voluntarily has relinquished some of his expectation of privacy by sharing access or control over his property with another person.

A search conducted pursuant to an officer's reasonable but mistaken belief that a third party had authority to consent is thus on an entirely different constitutional footing from one based on the consent of a third party who in fact has such authority. Even if the officers reasonably believed that Fischer had authority to consent, she did not, and Rodriguez's expectation of privacy was therefore undiminished. Rodriguez accordingly can challenge the warrantless intrusion into his home as a violation of the Fourth Amendment. This conclusion flows directly from *Stoner* v. *California*, 376 U. S. 483 (1964). There, the Court required the suppression of evidence seized in reliance on a hotel clerk's consent to a warrantless search of a guest's room. The Court reasoned that the guest's right to be free of unwarranted intrusion "was a right . . . which only [he] could waive by word or deed, either directly or through an agent." *Id.*, at 489. Accordingly, the Court rejected resort to "unrealistic doctrines of 'apparent authority'" as a means of upholding the search to which the guest had not consented. *Id.*, at 488.[1]

---

[1] The majority insists that the rationale of *Stoner* is "ambiguous—and perhaps deliberately so" with respect to the permissibility of third-party

## III

Acknowledging that the third party in this case lacked authority to consent, the majority seeks to rely on cases suggesting that reasonable but mistaken factual judgments by police will not invalidate otherwise reasonable searches. The majority reads these cases as establishing a "general rule" that "what is generally demanded of the many factual determinations that must regularly be made by agents of the government — whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the

searches where the suspect has not conferred actual authority on the third party. *Ante*, at 188. *Stoner* itself is clear, however; today's majority manufactures the ambiguity. When the *Stoner* Court stated that the Fourth Amendment is not to be eroded "by unrealistic doctrines of 'apparent authority,'" 376 U. S., at 488, and that "only the petitioner could waive by word or deed" his freedom from a warrantless search, *id.*, at 489, the Court rejected precisely the proposition that the majority today adopts.

The majority regards *Stoner*'s rejection of "unrealistic doctrines of 'apparent authority'" as ambiguous on the theory that the Court might have been referring only to unreasonable *applications* of such doctrines and not to the doctrines themselves. *Ante*, at 187. But *Stoner*'s express description of apparent authority *doctrines* as unrealistic cannot be viewed as mere happenstance. The Court in fact used the word "applications" in the same sentence to refer to misapplications of the *actual* authority doctrine: "Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency *or* by unrealistic doctrines of 'apparent authority.'" 376 U. S., at 488 (emphasis added). The full sentence thus unambiguously confirms that *Stoner* rejected any reliance on *apparent* authority doctrines.

Nor did the *Stoner* Court leave open the door for a police officer to rely on a reasonable but mistaken belief in a third party's authority to consent when it remarked that "there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room." *Id.*, at 489. Stating that a defendant must "by word or deed" waive his rights, *ibid.*, is not inconsistent with noting that, in a particular case, the absence of actual waiver is confirmed by the police's inability to identify any basis for their contention that waiver had indeed occurred.

warrant requirement—is not that they always be correct, but that they always be reasonable." *Ante*, at 185–186.

The majority's assertion, however, is premised on the erroneous assumption that third-party consent searches are generally reasonable. The cases the majority cites thus provide no support for its holding. In *Brinegar* v. *United States*, 338 U. S. 160 (1949), for example, the Court confirmed the unremarkable proposition that police need only probable cause, not absolute certainty, to justify the arrest of a suspect on a highway. As *Brinegar* makes clear, the possibility of factual error is built into the probable cause standard, and such a standard, by its very definition, will in some cases result in the arrest of a suspect who has not actually committed a crime. Because probable cause defines the reasonableness of searches and seizures outside of the home, a search is reasonable under the Fourth Amendment whenever that standard is met, notwithstanding the possibility of "mistakes" on the part of police. *Id.*, at 176. In contrast, our cases have already struck the balance against warrantless home intrusions in the absence of an exigency. See *supra*, at 191–192. Because reasonable factual errors by law enforcement officers will not validate unreasonable searches, the reasonableness of the officer's mistaken belief that the third party had authority to consent is irrelevant.[2]

---

[2] The same analysis applies to *Hill* v. *California*, 401 U. S. 797 (1971), where the Court upheld a search incident to an arrest in which officers reasonably but mistakenly believed that the person arrested in the defendant's home was the defendant. The Court refused to disturb the state court's holding that " '[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.' " *Id.*, at 802 (brackets in original) (quoting *People* v. *Hill*, 69 Cal. 2d 550, 553, 446 P. 2d 521, 523 (1968)). Given that the Court decided *Hill* before the extension of the warrant requirement to arrests in the home, *Payton* v. *New York*, 445 U. S. 573 (1980), *Hill* should be understood no less than *Brinegar* as simply a gloss on the meaning of "probable cause." The holding in *Hill* rested on the fact that the police had probable cause to believe that Hill had commit-

The majority's reliance on *Maryland* v. *Garrison*, 480 U. S. 79 (1987), is also misplaced. In *Garrison*, the police obtained a valid warrant for the search of the "third floor apartment" of a building whose third floor in fact housed two apartments. *Id.*, at 80. Although the police had probable cause to search only one of the apartments, they entered both apartments because "[t]he objective facts available to the officers at the time suggested no distinction between [the apartment for which they legitimately had the warrant and the entire third floor]." *Id.*, at 88. The Court held that the officers' reasonable mistake of fact did not render the search unconstitutional. *Id.*, at 88–89. As in *Brinegar*, the Court's decision was premised on the general reasonableness of the type of police action involved. Because searches based on warrants are generally reasonable, the officers' reasonable mistake of fact did not render their search "unreasonable." This reasoning is evident in the Court's conclusion that little would be gained by adopting additional burdens "over and above the bedrock requirement that, with the exceptions we have traced in our cases, the police may conduct searches only pursuant to a reasonably detailed warrant." *Garrison*, *supra*, at 89, n. 14.

*Garrison*, like *Brinegar*, thus tells us nothing about the reasonableness under the Fourth Amendment of a warrantless arrest in the home based on an officer's reasonable but mistaken belief that the third party consenting to the arrest was empowered to do so. The majority's glib assertion that "[i]t would be superfluous to multiply" its citations to cases like *Brinegar*, *Hill*, and *Garrison*, *ante*, at 185, is thus correct, but for a reason entirely different than the majority suggests. Those cases provide no illumination of the issue raised in this case, and further citation to like cases would be

---

ted a crime. In such circumstances, the reasonableness of the arrest for which the police had probable cause was not undermined by the officers' factual mistake regarding the identity of the person arrested.

as superfluous as the discussion on which the majority's conclusion presently depends.

## IV

Our cases demonstrate that third-party consent searches are free from constitutional challenge only to the extent that they rest on consent by a party empowered to do so. The majority's conclusion to the contrary ignores the legitimate expectations of privacy on which individuals are entitled to rely. That a person who allows another joint access to his property thereby limits his expectation of privacy does not justify trampling the rights of a person who has not similarly relinquished any of his privacy expectation.

Instead of judging the validity of consent searches, as we have in the past, based on whether a defendant has in fact limited his expectation of privacy, the Court today carves out an additional exception to the warrant requirement for third-party consent searches without pausing to consider whether "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment," *Mincey*, 437 U. S., at 394 (citations omitted). Where this free-floating creation of "reasonable" exceptions to the warrant requirement will end, now that the Court has departed from the balancing approach that has long been part of our Fourth Amendment jurisprudence, is unclear. But by allowing a person to be subjected to a warrantless search in his home without his consent and without exigency, the majority has taken away some of the liberty that the Fourth Amendment was designed to protect.