909 F.2d 1483
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Stephen W. FUGATE, Plaintiff-Appellee,
v.
UNITED STATES of America and William E. Palzkill, District
Director of Internal Revenue for the Internal
Revenue District of Kentucky, Defendant-Appellant.
 No. 89-5884.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1990.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 This civil action was instituted pursuant to Rule 41(e) of the Fed.R.Crim.P. by appellant Stephen W. Fugate against appellees, United States of America and the District Director of the Internal Revenue Service for Kentucky, seeking return of property that was seized by appellees as a result of a search of appellant's home. Appellant argues that the affidavits upon which the warrant was based were not sufficient to support the requisite finding of probable cause. Specifically, appellant asserts there is an insufficient nexus between the alleged crime contained in the affidavits and his residence.
 
 
 2
 The search and seizure was commenced as a result of an Internal Revenue Service (IRS) investigation involving approximately twelve named subjects relating to alleged illegal gambling activity. On January 5, 1989, a warrant was executed and property was seized from appellant's residence. Among the items seized as a result of the search was approximately $48,000.00 in cash taken from a safe and desk, both located in appellant's residence.
 
 
 3
 The district court held that under the totality of the circumstances, specifically the evidence as it related to appellant in the context of the investigation as a whole and in light of the investigating agent's experience in this area of law enforcement, there was probable cause to believe that appellant was involved in criminal activity and evidence of that activity would be found at appellant's residence. Accordingly, the court denied appellant's motion for judgment on the pleadings and entered an order dismissing his complaint, indicating that its order was final. We hold that there was probable cause to believe that evidence of a crime would be uncovered at appellant's residence and, therefore, we affirm.
 
 I.
 
 4
 There is no specific formula that must be met for a warrant; evidence must be judged on the totality of circumstances and in a reasonable and common-sense manner. Illinois v. Gates, 462 U.S. 213, 238 (1983). Reasonableness does not demand that the government be factually correct in its assessment that it will seize evidence related to crimes. Illinois v. Rodriguez, 58 U.S.L.W. 4892, 4894 (U.S. June 21, 1990) (No. 88-2018). Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered.
 
 
 5
 The standard for probable cause is set forth in the case of Carroll v. United States, 267 U.S. 132 (1925):
 
 
 6
 Probable cause exists where the facts and circumstances within the agents' knowledge, and of which they had reasonably trustworthy information ... [are] sufficient to themselves to warrant a man of reasonable caution in the belief that ... a crime has been or is being committed, and that a seizable property can be found at the place or on the person to be searched.
 
 
 7
 Id. at 162.
 
 
 8
 Certainty is not required at this stage. The exact quantum of support required has frequently been described as "a fair probability," but more than a "mere suspicion," that evidence will be discovered. Facts can amount to a fair probability without proof beyond a reasonable doubt or even a prima facie showing. Illinois v. Gates, 267 U.S. at 235. Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, great deference is normally paid to the determination of an issuing judge. "Reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a [judge's] determination." United States v. Leon, 468 U.S. 897, 914 (1984) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant. In Lambert v. United States, 771 F.2d 83 (6th Cir.), cert. denied, 474 U.S. 1034 (1985), we held that a magistrate's determination on the question of probable cause will not be reversed if the record contains a "substantial basis for his probable cause findings." Id. at 93.
 
 II.
 
 9
 Appellant claims that the affidavits upon which the district judge relied in issuing the December 30, 1988 search warrant for appellant's home did not contain sufficient information upon which to base a finding of probable cause. The affiant, Lawrence James Riddle, Jr., is a Special Agent of the Criminal Investigation Division of the Internal Revenue Service. In the affidavits, one 28-pages in length and the other a 22-page supplement, Agent Riddle relates his extensive experience in investigating federal wagering and tax law violations and evidence which he uncovered allegedly implicating appellant in such crimes. Agent Riddle found probable cause to believe appellant was engaged in bookmaking activities by his assessment of the particular type of activity found to be occurring among known bookmakers and appellant. The affidavits set forth activities specifically related to appellant. These activities include, but are not limited to, the following:
 
 
 10
 a. Phone records for October, November, December 1986 and January 1987 reflect that 298 calls were made from the residence of a known bookmaker, James Majors,[1] to either of two phone numbers subscribed by appellant.
 
 
 11
 b. Line sheets[2] taken from a known bookmaker's trash revealed the designation "Fug" across the top with other notations thought to be abbreviations for known bookmakers' names.
 
 
 12
 c. Phone records from another known bookmaker's trash indicated 330 long distance calls in April 1988 to other known bookmakers, sports lines and to one of the phone numbers suscribed by appellant.
 
 
 13
 d. A spiral notebook found in a known bookmaker's trash on July 10, 1988 revealed numerous wagers that appeared to be "layoffs"[3] from other bookies; one identified as "FU," believed to be appellant. A search of the same known bookmaker's trash on September 4, 1988 revealed a steno notebook listing bets from, among others, "FU" totalling $4,300.00.
 
 III.
 
 14
 Appellant points out that the affiant relates that 298 telephone calls were made from James Majors, the subject of a gambling investigation, to either of two numbers subscribed to by the appellant, but that nothing in the affidavits indicate that where the number were subscribed, i.e., appellant's residence, place of employment or other place. Appellant further points out that the affidavits fail to state any circumstances that would indicate he was the one who was actually receiving the calls from Majors. Appellant's criticism of the affidavits suggests an unduly technical and restrictive analysis. Affidavits for search warrants must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 108 (1965). There is no requirement that each factual allegation which the affiant sets forth be independently documented or that each fact which contributed to his conclusion be spelled out. Jaken v. United States, 381 U.S. 214, 224 (1965). It simply requires that enough information be presented to the magistrate or court "to make a practical, common-sense decision whether given all of the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. at 238.
 
 
 15
 Appellant's argument focuses on only a few of the factors rather than the extensive number of factors set forth in the affidavit and supplemental affidavit. It was the duty of the issuing court to review the "totality of the circumstances," including the modus operandi of the individual suspected of criminal activity.
 
 
 16
 In this case, we observe the two affidavits documented with particularized detail the existence of a large scale bookmaking enterprise of which appellant was allegedly a member. Two telephone numbers subscribed by appellant were called excessively by a convicted bookmaker. We stress the fact that Agent Riddle has extensive background in investigating illegal gambling activities. He is an experienced veteran of the Criminal Investigation Division of the IRS, having worked in that capacity since August of 1972. As a result of this experience, Agent Riddle knows that bookmakers often use more than one location from which to conduct their operations, such as a residence.[4] This factor must be considered in determining whether appellant would use his residence for either conducting operations or storing gambling paraphernalia or other instrumentalities of crime.
 
 IV
 
 17
 We find there was sufficient information contained in the affidavits to establish probable cause that evidence of a crime would be found in appellant's residence. In so finding, we note the inclusion of all the relevant implicating allegations of the affidavits which we construe in a "common-sense" review of the "totality of circumstances." Illinois v. Gates, supra. Accordingly, for the reasons stated above, the district court's order dismissing appellant's complaint is AFFIRMED.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Agent Riddle had been provided with information by law enforcement officials regarding facts relating to the gambling activities of Majors and others. In 1987, Majors was indicted in the Western District of Tennessee for violation of conspiracy and gambling statutes. He was later tried, convicted and sentenced to two years probation
 
 
 [2]
 Bookmakers keep a sheet commonly referred to as a "line sheet," which lists the sporting events scheduled to take place along with the starting time and the point spread, or odds on sporting events. It is common for the bookmaker to record notations on the "line sheets" which indicate the money or the number of wagers he accepts on each sporting event listed
 
 
 [3]
 "Laying off" characterizes the practice whereby a bookmaker has more money bet on a horse race or a sporting event than he desires and he transfers or hedges all or part of the bet to another bookmaker. See: United States v. Avarello, 592 F.2d 1339 (5th Cir.), cert. denied, 444 U.S. 844 (1979). For example, the typical better or "player" bets $11 to win $10. The bookmaker retains the $11 if the better loses, and pays $21 if the better wins ($11 plus $10). The bookmaking operation would attempt to equalize or "balance" the number of bets on each side and insure a profit of the $1 "vigorish" or "juice". For example, suppose the bet concerned Team A v. Team B. If two bets were placed on Team A and two bets were placed on Team B, the book operation would take in $44 ($11 on four bets). Either Team A or Team B would win. The book would pay out $42 (the original two $11 bets and two $10 winnings) and receive a $2 profit irrespective of which team won. Axiomatically, the bookmaker's risk of loss decreases as the number of bets both for and against a particular team are equalized. In an attempt to balance the bets to minimize risk, bookmakers confer with one another and shift or "lay off" bets. United States v. Algie, 721 F.2d 1039, 1044-45, n. 2 (1983) (Krupansky, J., dissenting)
 
 
 [4]
 Pages 1-6 of Agent Riddle's initial affidavit clearly indicate he has extensive knowledge of the terminology and habits of bookmakers