

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-2008

# Warner v. McCunney

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5167

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Warner v. McCunney" (2008). *2008 Decisions*. Paper 1789.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1789

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5167
_____

THOMAS WARNER

Appellant.

v.

JOSEPH MCCUNNEY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 05-1248)
District Judge:  Honorable Harvey Bartle, III

_____

Submitted under Third Circuit LAR 34.1(a)
August 28, 2007


Before:   BARRY, CHAGARES, and ROTH, <u>Circuit Judges</u>.

(Opinion filed January 8, 2008)

PER CURIAM:

Thomas Warner appeals from the District Court's order, entered October 27, 2005, granting Joseph McCunney's motion for summary judgment. We will affirm.

In December 2002, Miles Warner and his wife Mary were found murdered in their home in Chadds Ford, Pennsylvania. Thomas Warner is one of Miles Warner's children; Mary Warner was his stepmother. Sallie Anderson, who is Thomas Warner's sister, is co-executrix of Miles Warner's estate. In March 2003, Anderson found some bullets in a hallway closet in her parents' house. She called McCunney, the Pennsylvania state trooper who was leading the investigation of the murders, and gave him permission to search the house. McCunney arrived at the house with trooper Randy Testa and members of a forensic team. Anderson took the officers to a second-floor storage room in which Thomas Warner had stored some belongings, including a small plastic container. In one of the drawers of the plastic container, Testa found bullets similar in caliber to those used to kill Miles and Mary Warner. Testa informed McCunney, who had left the room to search the basement. McCunney telephoned his supervisor and advised Testa to stop the search. Shortly thereafter, McCunney's supervisor advised McCunney that the search should not continue until a warrant could be obtained. Two warrants were secured later that day: one was for the Warners' house and the other was for Thomas Warner's apartment. After obtaining the

2

warrants, Testa and McCunney seized the bullets found in the plastic container as well as some papers. They also seized several items from Thomas Warner's apartment.

On March 16, 2005, Thomas Warner (hereafter, Warner) filed a complaint pursuant to 42 U.S.C. § 1983 against McCunney, alleging that McCunney had violated his Fourth Amendment right to be free from unreasonable searches and seizures; he sought compensatory and punitive damages. McCunney filed a motion for summary judgment, which the District Court granted. Warner filed a timely notice of appeal.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary. McGreevey v. Stoup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Saldana v. K-Mart Corp., 260 F.3d 228, 232 (3d Cir. 2001). We may affirm the District Court on any grounds supported by the record. See Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (en banc).

Warner argues that the initial, warrantless search of his property at his father's house violated his rights under the Fourth Amendment. The District Court did not determine whether that search was valid because it concluded that the search was conducted by Testa (who is not a defendant in this matter) while McCunney was in the basement and that McCunney thus was not personally involved in the search.

To avail himself of the protection accorded by the Fourth Amendment, Warner must

3

show that he had a legitimate expectation of privacy in the area searched. See Minnesota v. Olson, 495 U.S. 91, 95-96 (1990); see also Rakas v. Illinois, 439 U.S. 128, 143 (1978) (a person who claims the protection of the Fourth Amendment must show a legitimate expectation of privacy in the invaded place). To show a legitimate expectation of privacy in searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable, that is, one that society is willing to accept. See Olson, 495 U.S. at 96-97. Several factors are relevant to this showing: whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises. See, e.g., Rawlings v. Kentucky, 448 U.S. 98, 105 (1980); United States v. Heckenkamp, 482 F.3d 1142, 1146 (9th Cir. 2007); United States v. Brown, 408 F.3d 1049, 1051 (8th Cir. 2005).

The following facts are undisputed. Although Warner had resided at the Chadds Ford residence occasionally during the two decades that preceded his father's death, he had not slept overnight at the residence since 1993 or 1994. About one month before his father's murder, Warner had placed some of his personal belongings in a small, second-floor storage room in the Chadds Ford residence. The door to the room was unlocked, and the room was accessible to anyone in the house. Some of Warner's belongings were in open boxes; some were in a small, plastic container with drawers. Although the top and sides of the container

4

were opaque, the front of the container was clear.  Nothing in the record indicates that the plastic container was locked.  At the time of the search, the property was under the control of the executors of Miles Warner's estate, one of whom was Warner's sister.  On this record, Warner has not shown that he had a legitimate expectation of privacy in the storage room. See United States v. Hunyady, 409 F.3d 297, 301-02 (6th Cir. 2005)(appellant did not have a reasonable expectation of privacy in his late father's house where appellant did not lawfully reside in the house, and the house was under the control of a personal representative).

In any event, the warrantless search of the Chadds Ford residence did not violate the Fourth Amendment's proscription of unreasonable searches because McCunney had obtained Anderson's consent to search the premises.  See United States v. Matlock, 415 U.S. 164, 170-71 (1974); see also  Illinois v. Rodriguez, 497 U.S. 177, 186-89 (1990) (warrantless search is valid when based upon the consent of a third party whom the police reasonably believe to possess common authority over the premises).

Warner also asserts that there was no probable cause to support the search warrant for his apartment because McCunney's affidavit in support of the warrant contained misstatements of material fact.  The District Court correctly determined that Warner failed to show that McCunney "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for [the] warrant" and that "such statements or omissions [were] material, or necessary, to the finding of probable cause."  See Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000).

For the foregoing reasons, we will **affirm** the judgment entered by the District Court. Warner's motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), is **denied**.