ORFINGER, J.,
concurring with opinion.
I concur with the Court’s opinion. I write separately to comment on several unsettled issues in the jurisprudence of exactions and takings.
What Is An Exaction?
Though Nollan[1] and Dolan[2] established a two-part test to determine the constitutionality of an exaction demanded by the government as a condition for development approval, the threshold question of what constitutes an exaction, thereby triggering the Nollan/Dolan analysis is far from settled. See generally Jane C. Needleman, Exactions: Exploring Exactly When Nollan and Dolan Should be Triggered, 28 Cardozo L. Rev. 1563 (2006). Neither courts nor academics subscribe to a single definition. For example, one academic defines an exaction as a requirement that a landowner give up a constitutionally-protected right in exchange for some benefit from the government. Stewart E. Sterk, What Counts as an Exaction?, 19 No. 4 N.Y. Real Est. L. Rep. 1, 3 (Feb. 2005). Another expanded on this definition, concluding that exactions are “the concessions local governments require of property owners as conditions for the issuance of the entitlements that enable the intensified use of real property.” Mark Fenster, Takings Formalism & Regulatory Formulas: Exactions & the Consequences of Clarity, 92 Cal. L. Rev. 609, 611 (2004). The Texas Supreme Court embraced a similar broad definition, recognizing that “any requirement that a developer providefs] or do[es] something as a condition to receiving municipal approval is an exaction.” Town of Flower Mound v. Stafford Estates Ltd. P’ship, 135 S.W.3d 620, 625 (Tex.2004). Likewise, the Utah Supreme Court in Salt Lake County v. Board of Education of Granite School District, 808 P.2d 1056, 1058 (Utah 1991), explained:
[Development exactions may be defined as contributions to a governmental entity imposed as a condition precedent to approving the developer’s project. Usually, exactions are imposed prior to the issuance of a building permit or zoning/subdivision approval ... [and] may take the form of: (1) mandatory dedications of land for roads, schools or parks, as a condition to plat approval, (3) water or sewage connection fees, and (4) impact fees.
(Quotations and citations omitted). Finally, in City of Monterey v. Del Monte Dunes at Monterey Ltd., 526 U.S. 687, 702, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), the United States Supreme Court concluded that exactions are “land-use decisions conditioning approval of development on the dedication of property to public use.”
Regardless of how one chooses to define an “exaction,” the first step in a Nol-lan/Dolan analysis is to determine whether the required “exaction,” be it a dedication, fee or improvement, if separated from the development prohibition, would constitute a taking. If it would constitute a taking separate from the development prohibition, only then do I believe that the Nollan/Dolan standards become relevant. See Sterk, supra at 3.
Can There Be A Taking When the Landowner Says No?
The dissent argues that Mr. Koontz has no right to compensation, as no taking occurred, given his refusal to surrender to the government’s demands. This argu *14 ment is premised on the notion that after the government turned down his application, Mr. Koontz had the same development rights that he had before he began the permitting process. He lost nothing, as nothing had changed. Given the divergent views of what constitutes an exaction, that argument has logical appeal, and was the specific argument made in the dissent by Justice Stevens in Dolan. See Dolan, 512 U.S. at 408, 114 S.Ct. 2309 (Stevens, J., dissenting). Had the Dolan majority not rejected this precise argument, I would agree with the dissent on this point as it is doctrinally and logically supportable.
Should the Doctrine of Unconstitutional Conditions be Applied to Takings Jurisprudence?
The “exactions” theory of takings jurisprudence has its roots in “the well-settled doctrine of ‘unconstitutional conditions,’ ” which sets limits on the manner by which the government exercises its discretionary authority. Dolan, 512 U.S. at 385, 114 S.Ct. 2309. However, while the doctrine of unconstitutional conditions may be “well-settled,” it is certainly not well understood. See generally Cass R. Sunstein, Why the Unconstitutional Conditions Doctrine is an Anachronism (With Particular Reference to Religion, Speech, and Abortion), 70 B.U.L. Rev. 593 (1990); Richard A. Epstein, Unconstitutional Conditions, State Power and the Limits of Consent, 102 Harv. L. Rev. 4 (1988).
In general terms, the “doctrine of unconstitutional conditions” holds that the government ordinarily may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government has the discretion to withhold the benefit altogether. 16A Am. Jur. 2d Constitutional Law § 395 (2008). But applying that premise in the real world is extremely problematic. One who labors in this field might reasonably ask: When may the government properly ask a citizen to waive a constitutional right in order to obtain a benefit the government has no obligation to provide? The answer suggested by the doctrine of unconstitutional conditions “is that sometimes the government may condition discretionary benefits on the waiver of rights, and sometimes it may not.” See Thomas W. Merrill, Dolan v. City of Tigard: Constitutional Rights as Public Goods, 72 Denv. U. L. Rev. 859, 859 (1995). That uncertainty and unpredictability in the law benefits no one.
As the instant case demonstrates, when the government has the absolute discretion to grant or deny a privilege or benefit, it still may incur significant liability if, at the conclusion of the land use/development decision, it is found to have improperly pressured or coerced the landowner to give up or waive a constitutional right. And even more troubling, the potential for governmental liability may be just as likely if the government simply reaches a bit too far in the bargaining process. By way of example, no one can doubt that it would be improper to condition receipt of government approval for a development on the agreement of the developer to vote for a certain candidate in an upcoming election. In that circumstance, we would easily find such a condition to be unconstitutional. However, a more likely scenario is one in which the government asks the landowner for the dedication of twenty acres of wetlands for conservation purposes. Then, after the fact, a court concludes that only a ten-acre dedication was “roughly proportional” to the impact of the proposed development. The consequence of the government asking for a bit too much (but far short of extortion) is governmental liability for damages premised on the exactions theory.
*15 Given the imprecision inherent in the application of the doctrine of unconstitutional conditions, and assuming that governmental entities are generally risk averse, the response from the government to a request by a landowner for a discretionary benefit will likely be a resounding “no.” That is unfortunate because at their best, “exactions reflect a sincere government effort to require developers to pay for the costs development places on the surrounding community.” Mark W. Cordes, Legal Limits on Development Ex-actions: Responding to Nollan and Dolan, 15 N. Ill. U. L. Rev. 513, 513 (1995).[3]
Because the burden to justify a requested exaction is on the government, liability can be avoided if the government simply refuses to engage in the bargaining process with a landowner. Or, a more likely outcome is that the government will refuse to offer any conditions in exchange for development approval, but will consider offers from the landowner. It is hard to imagine that a landowner could invoke the doctrine of unconstitutional conditions and claim a taking if the landowner, and not the government, initiates the bargaining process and makes all of the offers. This role reversal accomplishes little, but seems a possible outcome given the uncertainty inherent when applying the doctrine of unconstitutional conditions to land use/development decisions rather than more traditional takings jurisprudence.
There is no doubt that the government should act reasonably in its negotiations with landowners during the permitting process. However, given the imprecision inherent in the “essential nexus” and “rough proportionality” tests mandated by Nollan and Dolan, the government risks significant liability if, after the fact, it is found to have asked for too much. Overreacting is an inherent risk in the bargaining process. But should every misstep by the government, however reasonable, equate to a taking and create liability? In Fourth Amendment jurisprudence, the United States Supreme Court held that “what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable.” Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). I think Nollan and Dolan should likewise be read to require governments to act reasonably in its permitting and land use decisions, while recognizing that such decisions may not always be correct. Perhaps the Supreme Court intended the “rough proportionality” test to encompass such a “wrong but reasonable” standard, but that is far from clear.

. Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

. Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

. As Professor Cordes correctly points out, at their worst, the system of exactions has been a means by which governments can use their monopoly power to extort from developers property interests often unrelated to the proposed development. Cordes, supra at 513-14.