KAREN NELSON MOORE, Circuit Judge,
concurring in the judgment.
I agree with the majority that Heather Hays had apparent authority to consent to Officers Grassnig’s and Bolton’s entry into the Hays household. I am unconvinced that the officers did not thereafter violate Edward Hays’s Fourth Amendment rights by refusing to leave the house after he objected to their presence, however. See Georgia v. Randolph, 547 U.S. 103, 122-23, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). Because Randolph is unclear as to when a tenant must object in order to override a co-tenant’s consent, and because our subsequent clarification of the issue in United States v. Tatman, 397 Fed.Appx. 152, 160-62 (6th Cir.2010), postdates the events at the Hays household that led to this litigation, I can concur in the majority’s holding that Grassnig and Bolton are entitled to qualified immunity on the grounds that the contours of the right identified in Randolph were not clearly established at the time. The majority’s discussion of the scope of Randolph is thus unnecessary. Because I also believe that it is incorrect, I must briefly respond.
To the extent that the majority reads Randolph as holding that Hays must have objected before the officers entered his home in order to revoke Heather’s previously given consent, I disagree for the reasons explained in Tatman. See 397 Fed.Appx. at 160-63; see also Gates v. Tex. Dep’t of Protective & Regulatory Servs., 537 F.3d 404, 426 (5th Cir.2008) (following Randolph, “[i]t is only a small step to conclude that a physically present co-occupant may revoke or withdraw the consent given by another occupant” after police have entered).’ Assuming that the majority’s description of Randolph as holding that a co-tenant’s objection is ineffective “after a legitimate search has already begun” means something other than “after the police have entered,” I still question the soundness of this standard. It is unclear at what point after the police *981 enter a residence that a search begins for the purposes of this view of Randolph.
Read in context, the better understanding of Randolph’s “fine line” rule, 547 U.S. at 121, 126 S.Ct. 1515, is that a tenant cannot revoke a co-tenant’s previously given consent for the police to enter or search a residence once the police have already discovered contraband or once probable cause for an arrest has been established; similarly, an absent tenant cannot later argue that a search within the residence to which a co-tenant consented was unlawful if the government seeks to use evidence discovered during that search. The Court explained that the purpose of this rule was to align the holding in Randolph with Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), and United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), which held that evidence seized in a warrantless search of the defendant’s residence was admissible at trial when a third party with actual or apparent common authority had consented to the search, as well as to clarify that officers are not required “to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received.” Randolph, 547 U.S. at 121-22, 126 S.Ct. 1515. Neither purpose is undermined by requiring officers to heed the objection of a co-tenant who arrives on the scene once the police have already entered the house but prior to the seizure of evidence.
With these observations, I concur in the judgment affirming the district court’s grant of summary judgment on qualified-immunity grounds.