UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4379

ZACHARY B. TINSLEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-301)

Submitted: September 15, 1998

Decided: October 13, 1998

Before ERVIN and WILKINS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

JeRoyd Wiley Greene, III, ROBINSON & GREENE, Richmond, Virginia, for Appellant. Helen F. Fahey, United States Attorney, S. David Schiller, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Appellant Zachary B. Tinsley was convicted by a jury of two counts of being a felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g) (West Supp. 1998). Prior to trial, Tinsley moved to suppress seized evidence of a handgun and ammunition; he asserted that the evidence was not obtained pursuant to a valid consent and that it was not seized pursuant to a lawful arrest. After a hearing, the district court denied the motion. On appeal, Tinsley asserts that the district court improperly denied his motion to suppress evidence. We affirm.

In October 1997, the Richmond Police Department received a 911 call from a pay phone. The caller, Christine Terry, called twice to ask for help because her boyfriend, Tinsley, was "beating her up." Officer Bates responded to the call and located Terry; he immediately noted she had no shoes on and that she had a "blood dried lip."

Terry informed Bates that she was running away from her boyfriend, who had beaten her up. She stated that Tinsley hit her in the face with a shoe, choked her, and punched her in the stomach. Terry continued that as a result of assistance from her and Tinsley's son, she was able to escape from Tinsley to place the 911 calls. Terry stated that Tinsley pursued her and threatened to shoot her; she also informed Bates that Tinsley kept a gun in a dresser drawer in their bedroom in the residence in which they both lived. She also told Bates he could enter the house, and Bates believed this was sufficient authority and consent for him to enter.

When they arrived at the residence, the officer observed Tinsley's car as Terry described it parked behind the house. Bates called for back-up protection, and several police units responded. Bates and several officers knocked on the door, and Terry and Tinsley's eleven-

2

year-old son eventually answered the door. Though the boy initially stated his father was not home, he ultimately let the officer in and told him that his father was in the back room of the house.

The officers located Tinsley in a back bedroom with another child, and he complied with their direction to walk towards them with his hands up. In the hallway, the officers handcuffed and arrested Tinsley for domestic violence. Bates then conducted a search for guns; he went to the dresser in the bedroom and found the pistol as Terry described. The weapon was ten to twelve feet from where Tinsley was arrested; the drawer was open, and the loaded gun was in plain view. Upon his arrest and after receiving Miranda* warnings, Tinsley informed the officers that he was a convicted felon, but he denied he had a weapon.

The court concluded after a hearing on Tinsley's motion to suppress that the search was a search incident to arrest and denied the motion. The court found that both Terry and her son consented to Bates's entry into the house and that the search was incident to Tinsley's arrest.

We review the district court's factual findings on a denial of a motion to suppress for clear error and its legal conclusions de novo. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). Fourth Amendment rights are waived and a search may be conducted without probable cause or a search warrant when valid consent is given. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Such consent may be obtained from a third party"who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). Such common authority rests on general access to or mutual use of the place to be inspected under circumstances that make it reasonable to believe that the third party has the right to permit the inspection in her own right and that the absent target has assumed the risk that the third person may grant this permission to others. See United States v. Block, 590 F.2d 535, 539-40 (4th Cir. 1978). A warrantless entry is valid even if based upon the consent of a third party whom police reasonably believe has authority over the

_____

*Miranda v. Arizona, 384 U.S. 436 (1966).

3

premises but who does not. See Illinois v. Rodriguez, 497 U.S. 177, 185-89 (1990). The determination of such consent must be judged against an objective standard, whether the facts available to the officer warrant a person of reasonable caution in the belief that the consenting party had authority over the premises. See id. at 188. The district court's factual findings on consent are reviewed under a clearly erroneous standard. United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996) (in banc).

We agree with the Government that Bates had no reason to question whether Terry had the authority to consent to his entry into the house in which he arrested Tinsley. She told him she lived there and was co-owner of the house and accurately described the bedroom and the location of the gun. Thus, Bates acted reasonably in concluding that he entered the home with appropriate consent. The district court's determination in this respect was not clearly erroneous.

Tinsley continues that because he was not lawfully arrested, the officers improperly searched for the gun. He continues that because he was handcuffed, the police acted unreasonably in locating and seizing the gun, which was several feet away. As a safety measure, officers may conduct a protective search of an area in connection with an arrest to search for weapons within the grab area of an individual when the officers have a reasonable belief that the individual is potentially dangerous. See Michigan v. Long, 463 U.S. 1032, 1048-49, 1052 n.16 (1983); Terry v. Ohio, 392 U.S. 1, 27 (1968). The fact that a suspect is handcuffed and being observed may restrict the area within his reach, but it does not negate all risk he may obtain a weapon and thus pose a danger. See United States v. Horne, 4 F.3d 579, 586 (8th Cir. 1993).

First, we conclude that Bates's warrantless arrest of Tinsley was proper under Va. Code Ann. § 19.2-81.3 (Michie Supp. 1998). Officer Bates received the radio report, spoke with the victim, observed her condition (including a bloodied lip), and was in a position to assess her credibility. Therefore, any search incident to that arrest was lawful.

In addition, we also conclude that the officer's protective sweep of the residence when arresting Tinsley was appropriate. When a reason-

4

ably prudent officer, based upon articulable facts, would believe that an area to be swept harbors a danger to those on the arrest scene, a protective sweep of a personal residence in conjunction with an in-home arrest is authorized. See Buie v. Maryland , 494 U.S. 325, 333-34 (1990). Here, police located Tinsley, who had beaten and threatened Terry, in his home with two small children. They were also informed that Tinsley possessed a firearm in the home. Therefore, it was reasonable to conduct a cursory sweep for weapons for their own safety and the safety of the children in the home to secure the weapon Terry told them was there. Moreover, the loaded gun was in plain view in an open drawer close to Tinsley. We therefore agree with the court's denial of suppression on this basis as well.

For these reasons, we affirm Tinsley's convictions. We dispense with oral argument because the factual and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>