NO. 07-01-0211-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



DECEMBER 20, 2001



______________________________




TRUESHELL DENISE GREY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 287TH DISTRICT COURT OF BAILEY COUNTY;



NO. 1830; HONORABLE JACK D. YOUNG, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and JOHNSON, JJ.

 In two issues, appellant Trueshell Denise Grey challenges an order removing the
community supervision granted her after her conviction by a jury of the offense of criminal
negligence causing injury to a child. Her sentence was assessed by the trial court at
confinement in a state jail facility for two years. However, the imposition of the sentence
was suspended and appellant placed under community supervision for a period of two
years "only after serving thirty (30) days in the Bailey County Jail and/or a State Jail
Facility." In addition to that sentence, she was ordered to pay a $1,000 fine. For reasons
we later state, we must dismiss this appeal because we lack jurisdiction to consider it.

 Appellant originally attempted to appeal her conviction, but her direct appeal was
dismissed by this court because no timely notice of appeal was filed and we lacked
jurisdiction to consider it. A mandate carrying forward that dismissal was issued on
February 1, 1998. The State filed a motion to revoke probation on April 12, 2000. After
a hearing on that motion, on September 6, 2000, the trial court entered its order in which
it found that appellant had been confined in a state jail facility from November 9, 1999, until
December 8, 1999, which fulfilled the 30-day jail requirement and, therefore, her two-year
term of community supervision began on December 8, 1999. Noting that the motion to
revoke probation incorrectly alleged that appellant's community supervision period began
on May 1, 1997, and expired on April 30, 1999, the court also dismissed the motion to
revoke probation. Appellant did not timely attempt to appeal the trial court's holding as to 
the probation period.

 On November 21, 2000, the State filed another motion to revoke probation, which
was amended on March 6, 2001. At the April 11, 2001 hearing on the amended motion,
the trial court continued appellant under community supervision, but extended the
probation period to April 11, 2003, and modified the supervisory requirements to provide
that appellant serve a term of 23 months in a community corrections facility. That is the
order giving rise to this appeal.

 In her issues, appellant argues 1) the trial court erred in its finding in its September
6, 2000 judgment, that appellant's community supervision term commenced December 8,
1999, to terminate December 8, 2001, and 2) the requirement that appellant serve 30 days
in the Bailey County Jail was an unauthorized sentence. 

 The basis of appellant's argument under her first issue is that her community
supervision period began on February 1, 1998, the date of the issuance of our mandate
dismissing her first attempt to appeal. Figuring that date as the beginning of her
probationary period, she reasons her period of community supervision expired on January
31, 2000, which was prior to the State's first motion to revoke filed on April 12, 2000. That
being so, she concludes, the trial court had no jurisdiction to modify her community
supervision. 

 In response, the State argues that appellant failed to timely perfect her appeal here
because she is actually complaining of the trial court's holding on September 6, 2000, as
to the period of community supervision. However, it points out, she did not file a notice of
appeal within 30 days from the issuance of that order. In that connection, a notice of
appeal must be filed within 30 days after the date sentence is imposed or suspended in
open court, or after the trial court enters an appealable order. Tex. R. App. P. 26.2(a)(1). 
In this instance, appellant's notice of appeal was not filed until May 10, 2001, which, of
course, is well in excess of 30 days after September 6, 2000. A timely notice of appeal is
necessary to invoke the jurisdiction of the appellate court. Slaton v. State, 981 S.W.2d
208, 210 (Tex.Crim.App. 1998); Olivo v. State, 918 S.W.2d 519, 522 (Tex.Crim.App. 1996). 
The State is correct in that appellant did not timely perfect her appeal, and we have no
jurisdiction to consider her complaint.

 Moreover, even if appellant had timely appealed the court's ruling, there is no merit
in her complaint. She relies on Easton v. Rains, 866 S.W.2d 656 (Tex.App.--Houston [1st
Dist.] 1993, no writ), for the proposition that the terms of probation are effective at the time
of the issuance of the appellate court's mandate. Id. at 659. We do not disagree with that
proposition. However, in this instance, the trial court's judgment specifically provided that
appellant's community supervision would continue two years after she had served the 30
days in a state jail facility. That portion of the judgment is as follows:

 IT IS THEREFORE CONSIDERED AND ADJUDGED by the Court that the
Defendant is guilty of the offense of the lesser included State Jail Felony of
Injury to a Child as included within the charge of the indictment and as found
by the jury, and that she be punished as has been determined by the Court,
that is, by confinement in a Texas Jail Facility for two (2) years, but that said
sentence be suspended and the Defendant be placed on community
supervision for two (2) years, but only after serving thirty (30) days in the
Bailey County Jail.

 

* * *



 The Defendant, after thirty (30) days confinement in the Bailey County Jail,
is placed on community supervision for a term of two (2) years, unless
revoked, modified, or terminated by the Court.


Thus, once our mandate was issued, appellant still had to serve 30 days in jail and then
remain on community supervision for two years. Therefore, her community supervision
period had not expired at the time the State filed its motion to revoke. 

 In her second issue, appellant claims the court's order requiring her to serve 30
days in jail was not authorized. In doing so, she argues that the statutory range of
punishment for the conviction of a state jail felony is by confinement in a state jail for any
term of not more than two years or less than 180 days. See Tex. Pen. Code Ann. §
12.35(a) (Vernon 1994). Thus, she posits, the trial court had no authority to order her to
serve 30 days in the Bailey County Jail in addition to the two years confinement in a state
jail facility. Therefore, she concludes, the sentence is void, because it exceeds the
statutory authorization. In mounting her challenge, she argues that because of the
unauthorized sentence, the original judgment was void, which would invalidate the order
revoking the probation granted her in the original judgment.

 In the recent case of Nix v. State, No. 793-00, slip op. at 5-7, 2001 WL 717453
(Tex.Crim.App. 2001), the court noted the existing rule that in cases that involved an
appeal from a revocation of "regular probation," an exception existed to the general rule
that defects in the original judgment not timely raised in a direct appeal from that judgment
could not be raised in that appeal. That exception exists in cases in which the error
asserted would render the original judgment void. Id. The court explicated that a criminal
judgment was void when: 1) the document purporting to be a charging instrument (i.e.,
indictment, information, or complaint) does not satisfy the constitutional requisites of a
charging instrument), thus, the trial court has no jurisdiction over the defendant; 2) the trial
court lacks subject matter jurisdiction over the offense charged, such as when a
misdemeanor involving official misconduct is tried in a county court at law; 3) the record
reflects there is no evidence to support the conviction; or 4) an indigent defendant is
required to face criminal trial proceedings without appointed counsel, when such has not
been waived in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d
799 (1963). Id. at p. 6 n.13-15. After listing these examples, the court commented that
while it hesitated to call this list an exclusive one, "it is very nearly so."

 This particular complaint arises from the trial court's original order placing appellant
under community supervision. In order to timely perfect a regular appeal from that
judgment, she must have given notice of appeal within 30 days from May 1, 1997, the date
of imposition of her sentence. Tex. R. App. P. 26.2(1). She did not do so. That being true,
unless her sentence was void, we are without jurisdiction in this attempt to consider
appellant's second challenge.

 In Coleman v. State, 955 S.W.2d 360 (Tex.App.--Amarillo 1997, no pet.), we were
presented with an analogous question. In that case, the appellant also argued that his
assessed sentence was void because it exceeded the allowable maximum. In that
connection, we opined "an interpretation of the law applicable to punishment, even if
erroneous, does not impact the court's jurisdiction to the extent it becomes a jurisdictional
issue . . . ." Id. at 362-63. We continue to adhere to that reasoning. Parenthetically, as
we did in Coleman, we note that the failure to properly perfect the appeal does not
foreclose appellant's right to post-conviction relief if, indeed, the sentence assessed was
not authorized under the statute. 

 Because we have no jurisdiction in this direct appeal to consider appellant's
complaints, we must, and do hereby, dismiss this appeal for want of jurisdiction.


 John T. Boyd

 Chief Justice


Do not publish.



lson, Appellant’s seventeen year old
sister. Nikki’s description of her brother matched the description of the burglar given to
Officer Chavez by witnesses to the burglary. She also told Officer Chavez where to find
her brother. 
          Appellant had been living with his mother, Donna Fay Gilbert, and Nikki in a house
located at 2615 1st Place, Lubbock, Texas, for approximately four months. His mother
leased the house and Appellant helped pay rent and utilities. Donna Fay and Nikki had
their own bedrooms. Appellant was staying in the living room and sleeping on the couch
until he could get his own place. He stored his clothes and personal items in a hallway
closet where his mother also stored blankets. 
          When Officers Chavez and Robert Escobedo arrived at the residence on 1st Place,
Detective Wims was already positioned in the alley. Officer Chavez approached the front
door and Officer Escobedo approached the side door. Appellant noticed the officers
outside the house and opened the side door. Officer Escobedo asked him to step outside. 
When he did so, he was arrested,


 handcuffed, and placed in the rear seat of a patrol car.
           The officers contacted Nikki and her mother and asked them to return to the
residence. Nikki picked her mother up at her workplace and they arrived at the residence
approximately twenty minutes later. When Donna Fay and Nikki arrived, they observed
Appellant in a patrol car that subsequently drove away. 
          Officer Chavez approached Donna Fay and asked for her consent to search the
residence. Officer Chavez then provided her with a written consent form.


 She signed the
consent form


 and accompanied the officers while they searched the house. The officers
found the victim’s black/gold Addidas shoes next to the living room couch, VHS player, and
Playstation with controllers and cords in Nikki’s bedroom, Citizen’s watch, gold bracelet,
gold grill, and the victim’s clothes in the hallway cabinet and unattached garage. 
          Detective Wims testified that officers typically seek consent to search a residence
from the owner. He did not ask Appellant for consent because he believed the house
belonged to Donna Fay and his investigation indicated Appellant had not been living in the
house for very long. Officer Chavez testified it was not his practice to ask every household
member for consent to search a residence. 
          During the suppression hearing, Appellant testified as to the events surrounding his
arrest. Appellant was not asked and he did not offer any testimony as to whether or not
he would have objected to a search of the residence if Officer Chavez would have sought
his consent.
          At the conclusion of the hearing, the trial court denied Appellant’s motion to
suppress the evidence located in the house and unattached garage stating:
The Court finds consent of the mother was freely, knowingly, and voluntarily. 
No threats or coercion by the officers. Consent was valid, officer’s behavior
exemplary and should be a model for other officers to use. The area where
the defendant apparently slept was not partitioned in any way. It was the
living room of the home that three occupants lived in. The Court finds that
the mother had, certainly authority to grant permission to search not only that
area, but the rest of the house. Motion denied.
 
          Following a jury trial, Appellant was convicted of the offense of burglary of a
habitation with intent to commit theft with enhancements. This appeal followed.
Discussion
          Appellant contends the residential search was unreasonable because the officers
purposefully removed him from the residence and placed him in a patrol car to avoid any
possible objection he might have had to the search as a co-tenant. He also contends the
trial court should have issued an article 38.23 instruction because the evidence at trial
raised a fact issue whether the officers intended to avoid his possible objection to the
search as a co-tenant by removing him from the residence.
          The State contends a search premised on his mother’s consent was reasonable
because there is no evidence Appellant objected, or would have objected, to the search. 
Further, the State asserts no factual issue existed at trial whether the officers intended to
remove Appellant from the residence, prior to obtaining his mother’s consent, in order to
circumvent his possible objection to a search of the residence.
          I.        Motion to Suppress
          A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion, 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. 
Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial court’s fact
findings are based on an evaluation of witness credibility or demeanor, almost total deference
is given to its factual determinations supported by the record. St. George v. State, 237
S.W.3d 720, 725 (Tex.Crim.App. 2007). However, on questions of mixed law and fact that
do not turn on the trial court’s evaluation of witness credibility and demeanor, we conduct a
de novo review. Amador, 221 S.W.3d at 673. Moreover, in reviewing a trial court’s ruling on
a motion to suppress, we review the evidence in a light most favorable to the trial court’s
ruling. Gutierrez v. State, 221 S.W.3d 680, 681 (Tex.Crim.App. 2007). 
           The burden is on the State to show that an exception to the warrant requirement 
existed at the time of the search. See Neal v. State, 256 S.W.3d 264, 282 (Tex.Crim.App.
2008). A warrantless search by police officers does not violate constitutional protections
against unreasonable searches and seizures if officers obtain the consent of a third party
possessing common authority over the premises to be inspected. United States v. Matlock,
415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). A third party’s consent is valid if the
facts available to the officer at the time of the search would allow a person of reasonable
caution to believe the consenting party had authority over the premises to be searched. 
Illinois v. Rodriguez, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). See
Brown v. State, 212 S.W.3d 851, 868 (Tex.App.–Houston [14th Dist.] 2006, pet. ref’d).
           Appellant does not dispute whether Donna Fay voluntarily consented to the search or
whether her consent was valid. Rather, relying upon Georgia v. Randolph, 547 U.S. 103, 126
S.Ct. 1515, 164 L.Ed.2d 208 (2006), Appellant maintains that, prior to seeking his mother’s
consent, the officers purposefully removed him from the scene to avoid a potential objection
to a consensual search. He argues that the police should have sought his consent because
he was a co-tenant and alone at the residence when the officers originally approached the
house. 
           The facts of this case are quite similar to those of Matlock, supra. In Matlock, the
accused was arrested in the front yard of a residence he shared with a Mrs. Graff and others. 
415 U.S. at 164. Although the officers were aware the accused lived in the house, the
arresting officers did not ask him which room he occupied or whether he would consent to a
search but were admitted to the house after Mrs. Graff gave her consent. Id. In a closet
shared by Mrs. Graff and Appellant, the officers seized a large amount of money. Id. Finding
the search reasonable, the United States Supreme Court held that, when the prosecution
seeks to justify a warrantless search by proof of voluntary consent, the prosecution is not
limited by proof that the defendant consented, but “may show that permission to search was
obtained from a third party who possessed common authority over or other sufficient
relationship to the premises or effects sought to be inspected.” 415 U.S. at 171 (collected
cases cited therein).
           Similarly here, as in Matlock, Appellant was arrested outside the house and neither
objected nor consented to a search of the residence. Although the officers knew Appellant
lived in the house, they did not ask him which room he occupied or whether he would consent
to a search. Rather, they obtained consent to search from his mother who leased the
residence and lived there with Appellant and his sister. Accordingly, we find the trial court did
not abuse its discretion in finding the search reasonable.
           Appellant’s reliance on Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164
L.Ed.2d 208 (2006), is misplaced. In Randolph, the United States Supreme Court held “that
a physically present inhabitant’s express refusal of consent to a police search is dispositive
as to him, regardless of the consent of a fellow occupant.” Id. at 122-23. In that case,
Randolph’s wife called the police over a domestic dispute. Id. at 107. When the police
arrived, Randolph’s wife told them that Randolph used drugs and had drugs inside the house. 
Police asked Randolph for consent to search the house, and he expressly refused. Police
then asked Randolph’s wife for consent to search, which she granted. The United States
Supreme Court held that Randolph’s refusal to consent trumped his wife’s subsequent
consent. Id. at 120. 
           The present case is distinguishable from Randolph because Appellant was neither
physically present when police asked Donna Fay for her consent, nor did he expressly object
to a search of the premises. Nevertheless, Appellant relies on the following statement in
Randolph to assert that the search was unreasonable because the officers purposefully
detained him in the patrol car to avoid a possible objection to a search of the residence prior
to obtaining his mother’s consent to the search: 
So long as there is no evidence that the police have removed the potentially
objecting tenant from the entrance for the sake of avoiding a possible objection,
there is practical value in the simple clarity of complementary rules, on
recognizing the co-tenant’s permission when there is no fellow occupant on
hand, the other according dispositive weight to the fellow occupant’s contrary
indication when he expresses it.
 
547 U.S. at 121-22 (emphasis added).
 
           In support, Appellant cites evidence that he was the only person at home when the
officers arrived, he was immediately detained or arrested, isolated in a patrol car, and was
never asked whether he would consent to a search. Appellant does not assert his detention,
the length of his detention, or his arrest were improper. Distilled to its essence, then, his sole
complaint is that the officers did not ask him whether he would consent to a search of the
residence. The officers, on the other hand, testified they normally sought consent from the
owner of the residence and believed the house belonged to Appellant’s mother. They further
testified that it was not their practice to seek consent from each household member prior to
searching a residence. 
           Testimony that the officers did not ask Appellant’s permission prior to seeking his
mother’s consent alone is not evidence of an intent to avoid a possible objection. This is
particularly so in the absence of any testimony that Appellant objected or would have objected
if asked. Under these circumstances, we agree with the Randolph Court that: 
[I]t would needlessly limit the capacity of the police to respond to ostensibly
legitimate opportunities in the field if we were to hold that reasonableness
required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. There is no
ready reason to believe that efforts to invite a refusal would make any difference
in many cases, whereas every co-tenant consent case would turn into a test
about the adequacy of the police’s efforts to consult with a potential objector. 
Better to accept the formalism of distinguishing Matlock from this case than to
impose a requirement, time consuming in the field and in the courtroom, with no
apparent systemic justification.
 
547 U.S. at 122.
 
           Appellant’s first issue is overruled.
           II.        Article 38.23 Instruction
           When reviewing alleged charge error, our review is a two-part inquiry. First, we
determine whether error exists. Druery v. State, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007)
(citing Almanza v. State, 686 S.W.2d 157, 171-72 (Tex.Crim.App. 1985)). If error exists, then
we determine whether the error caused sufficient harm to require reversal. Id. 
           A defendant must meet three requirements before he is entitled to submission of a
jury instruction under article 38.23:
(1) The evidence heard by the jury must raise an issue of fact;

 
(2) The evidence on that fact must be affirmatively contested; and 

 
(3) The contested factual issue must be material to the lawfullness of the
challenged conduct in obtaining the evidence.

 
 
Madden v. State, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007).

 
 
          Appellant urges he was entitled to an article 38.23 instruction because the evidence
at trial created a fact issue whether the officers purposefully removed him from the
residence and placed him in the patrol car to avoid a potential objection to a search of the
residence. He preserved this issue for appeal by objecting to the draft jury charge and
obtaining an adverse ruling from the trial court. Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007). See Loun v. State, 273 S.W.3d 406, 416-17 (Tex.App.–Texarkana 2008,
no pet.). 
          At trial, Officer Chavez testified that he went to Appellant’s address after locating the
car involved in the burglary, determined Nikki’s description of the car’s owner matched the
burglar’s description, and obtained Appellant’s location.


 When Officer Chavez initiated
contact with Appellant, he observed Appellant matched the description of the burglar and
the car’s owner.


 Officer Chavez then handcuffed Appellant and placed him in the rear seat
of his patrol car pending further investigation. With Appellant in custody, Officer Chavez
and Detective Wims attempted to determine who owned the residence where Appellant was
located. Detective Wims determined Appellant’s mother leased or owned the house. 
Thereafter, Officer Chavez sought her consent to perform a search. 
          Detective Wims testified that he searched public records and law enforcement files
to determine who owned the house. His investigation led him to believe the house was not
Appellant’s permanent residence. Although he was unclear whether Appellant’s mother
rented or owned the house, his investigation indicated she had the greatest access and
control over the residence. As a result, Appellant’s mother was contacted and asked to
return to the house. She arrived within the hour and Appellant was taken away in the patrol
car. After she consented to a search of the residence, the officers, accompanied by Donna
Fay and Nikki, proceeded to search the house and unattached garage. 
          In an attempt to raise a fact issue, Appellant points to evidence that he was alone at
the house when the officers arrived and the officers did not ask his permission to search. 
Instead, the officers requested his mother’s presence; detained him approximately an hour
in the patrol car until his mother arrived; and did not permit him to communicate with his
mother prior to his departure from the residence. 
          Appellant fails to raise a question of fact and thereby fails to meet the first prong of
the Madden test. Madden, 242 S.W.3d 510. Officer Chavez and Detective Wims
consistently testified they detained Appellant until they could determine who was the owner
or primary tenant before requesting consent to perform a search. When they determined
the owner was Appellant’s mother, they requested her presence and, after she arrived,
obtained her consent to search the house. There is no evidence Appellant objected, or
would have objected, to the search. 
          At best, Appellant’s evidence indicates he was a “potential objector, nearby but not
invited to take part in the threshold colloquy.” 126 U.S. at 121 (emphasis added). As such,
the rule in Matlock is applicable. Accordingly, because Appellant failed to raise any
disputed fact issue material to the admissibility of the stolen property discovered in the
residence, we find that the trial court committed no error by denying an article 38.23
instruction. Appellant’s second issue is overruled.
Conclusion
          The trial court’s judgment is affirmed.
 
 
                                                                           Patrick A. Pirtle 

                                                                                  Justice 

     

Do not publish.