DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Kevin A. Owens was convicted of endangering children, having a weapon under disability, and a number of drug-related offenses. This Court affirmed his convictions on direct appeal. He has now appealed from the trial court's denial, without holding an evidentiary hearing, of his petition for post-conviction relief. This Court affirms the trial court's judgment because he was not denied effective assistance of trial counsel, the trial court did not err by denying his petition without holding an evidentiary hearing, and the trial court's Journal Entry was sufficient.
 BACKGROUND {¶ 2} At approximately 1:15 a.m. on December 30, 2005, a number of people telephoned Akron Police and reported hearing gunshots at an apartment complex. As police were responding, people flagged down one of the cars and told the officers that a white SUV *Page 2 
might have had something to do with the gunshots. They also directed the officers to the area of the complex where, they said, the gunshots had come from. When the officers reached that area, they saw a white SUV parked outside an apartment and found six spent shell casings on the ground between the SUV and the apartment. When they knocked on the apartment door, Latia Lee and Byron Millsap opened it. Ms. Lee identified herself as the lessee and gave the officers permission to search the apartment for people who may have been involved in the gunshots.
 {¶ 3} Officers found three small children sleeping in one of the two bedrooms on the second floor. In the other, they found Mr. Owens, dressed in jeans, a tee shirt, and shoes, lying on the bed with his eyes closed. The officers identified themselves and told him to stand up. The mattress on the bed was askew, exposing part of the box springs, and the officers saw a baggie of marijuana lying on the springs. They handcuffed Mr. Owens, and two of them took him downstairs, while two others continued to look around the bedroom.
 {¶ 4} The officers looking around the bedroom saw a saucer-type plate containing white powder and razor blades on the dresser. The bottom drawer of a nightstand beside the bed was partially open, and they saw plastic baggies, rubber bands, a box of ammunition, and a state identification card belonging to Mr. Owens inside. They then asked Ms. Lee to sign a waiver allowing a more extensive search of the apartment, which she did.
 {¶ 5} The officers returned to the bedroom and continued to search. Under the bed, one of them found a bag of white powder, later identified as cocaine, and a shoebox containing approximately $2600. There were numerous items of men's clothing in the bedroom, along with several pieces of men's jewelry. There was also women's clothing in the bedroom. Mr. Owens told the officers that he was living at the apartment and that the men's clothing was his. *Page 3 
 {¶ 6} In a cabinet in the adjacent bathroom, an officer found a loaded 9 millimeter handgun. There were two rounds of ammunition in the handgun that matched the ammunition found in the nightstand and the spent casings found outside. A gunshot residue test one of the officers performed on Mr. Owens was negative, but one performed on Mr. Millsap was positive.
 {¶ 7} At trial, Mr. Owens's cousin testified that he was the owner of the narcotics found in the apartment. He claimed that he had free access to the apartment, had left the drugs there a few days before the search, and had not told either Ms. Lee or Mr. Owens that he had done so. On cross-examination, he conceded that he had not told police or the prosecutor before trial that he owned the drugs.
 {¶ 8} A jury found Mr. Owens guilty of endangering children, having a weapon under disability, and a number of drug related offenses, and this Court affirmed his convictions on direct appeal. He filed a timely petition for post-conviction relief, which the trial court denied without holding an evidentiary hearing. He has assigned three errors on appeal.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 9} Mr. Owens's first assignment of error is that his trial lawyer was ineffective and, therefore, the trial court incorrectly denied his petition for post-conviction relief. In order to be entitled to relief based on ineffective assistance of counsel, a defendant must show both that his lawyer's performance was deficient and that he was prejudiced by that deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). If he fails to satisfy either the deficiency or prejudice prong, he is not entitled to relief. State v. Bradley, 42 Ohio St. 3d 136, 143 (1989) (quoting Strickland, 466 U.S. at 697). In order to satisfy the prejudice prong, he must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. *Page 4 
 {¶ 10} Mr. Owens has argued that his trial lawyer was deficient in five ways. His first four arguments fail because, regardless of whether his lawyer's performance was deficient in the ways he has asserted, he has failed to demonstrate that he was prejudiced by those deficiencies. His fifth argument fails because it is a challenge to a strategic decision by his lawyer.
 {¶ 11} Mr. Owens's first argument is that his trial lawyer was deficient because he failed to move for suppression of statements he made to the police officers on the night of his arrest. He has asserted that his lawyer said he was going to move for suppression of both his statements and the evidence found in the bedroom, but failed to do so.
 {¶ 12} As mentioned previously, Mr. Owens told officers on the night they arrested him that the men's clothing in the bedroom was his and that he was living at the apartment. In an affidavit he filed in support of his petition for post-conviction relief, he asserted that the arresting officers failed to warn him that anything he said could be used against him. He argued to the trial court and has argued to this Court that his lawyer should have sought suppression of his statement to the officers and that his failure to do so led to the jury determining that the drugs found in the bedroom were his.
 {¶ 13} Assuming, without deciding, that Mr. Owens's lawyer was deficient in not seeking suppression of his statements that he lived at the apartment and was the owner of the men's clothing in the bedroom, it is not reasonably probable that the outcome of the trial would have been different without admission of those statements. To begin with, if his statement had been suppressed and the State considered it important to show that he lived there and owned the clothes, it no doubt could have proven both those facts through other evidence. Mr. Owens has not asserted that he did not, in fact, live there. Further, as pointed out by the State, it was not necessary for the jury to believe that he lived in the apartment in order to conclude that he *Page 5 
possessed the drugs found in the bedroom. The bag of marijuana was found on the box springs of the bed on which he was lying; the bag of cocaine and the shoebox of money were found under the same bed. That evidence alone would have been sufficient to support his convictions on the drug offenses. See State v. Varner, 9th Dist. No. 21056, 2003-Ohio-719, at ¶ 19, abrogated on other grounds by State v. Thornton, 9th Dist. No. 23417, 2007-Ohio-3743, at ¶ 13. To the extent Mr. Owens's first assignment of error is based upon his lawyer's failure to move to suppress his statements to the police, it is overruled.
 {¶ 14} Mr. Owens's second argument is that his trial lawyer was deficient because he failed to move for suppression of the evidence found in the bedroom. He has argued, based on this Court's decision inAkron v. Callaway, 162 Ohio App. 3d 781 (2005), that he had an expectation of privacy in the bedroom and officers failed to seek his permission before searching it. In Callaway, however, not only had nobody given a police officer permission to enter the defendant's father's house, the defendant had specifically told the officer that he could not enter. Mr. Owens failed to present any evidence that he told officers they could not search the bedroom. The outcome of this case, therefore, is not controlled by Callaway. Rather, it is controlled by the decision of the United States Supreme Court in Georgia v.Randolph, 547 U.S. 103 (2006).
 {¶ 15} In Randolph, the Supreme Court held that, when one occupant of a premises grants permission for a search and another occupant, who is present, objects to the search, evidence found cannot be used against the objecting occupant. In this case, Ms. Lee told police that she was the tenant of the apartment and granted them permission to search for people involved in the gunshots and, later, to search more extensively. Although Mr. Owens was present in the apartment, there is nothing in the record that indicates that he objected to either *Page 6 
search. None of the police officers who testified at trial said that he had objected, and he failed to assert in his affidavit in support of his petition for post-conviction relief that he had. He has suggested in his reply brief in this Court that, had the trial court held an evidentiary hearing, he would have testified that he had objected. Without an assertion in his affidavit that he objected, however, there was no reason for the trial court to hold an evidentiary hearing on this issue.
 {¶ 16} In the absence of an objection by Mr. Owens, a motion to suppress evidence found in the bedroom would have failed. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained."Randolph, 547 U.S. at 106 (citing Illinois v. Rodriguez, 497 U.S. 177
(1990)).
 {¶ 17} This Court notes that Mr. Owens has not argued that the initial search exceeded the scope of Ms. Lee's consent. To the extent Mr. Owens's first assignment of error is based on his lawyer's failure to seek suppression of evidence found in the bedroom, it is overruled.
 {¶ 18} Mr. Owens's third argument is that his trial lawyer was deficient because he failed to pursue "meaningful Criminal Rule 11 plea negotiations." In his affidavit in support of his petition in the trial court, he asserted that his lawyer never advised him of any plea negotiations and that he had no knowledge that any had taken place. Assuming that Mr. Owens's trial lawyer did fail to pursue plea negotiations, and further assuming that such failure was deficient, it is impossible for this Court to conclude that Mr. Owens would have achieved a different outcome through a plea agreement. This Court cannot speculate that the State would have been willing to enter into a plea agreement that would have been acceptable to Mr. Owens or what that *Page 7 
agreement would have been. To the extent Mr. Owens's first assignment of error is based on his trial lawyer's alleged failure to engage in meaningful plea negotiations, it is overruled.
 {¶ 19} Mr. Owens's fourth argument is that his trial lawyer was deficient because he failed to counsel, confer, and communicate with him "throughout these proceedings." Again, assuming that his lawyer did fail to communicate with him and that that failure was deficient, this Court cannot speculate that, if his lawyer had communicated with him, it would have led to a different result. To the extent Mr. Owens's first assignment of error is based on his lawyer's alleged failure to counsel, confer, and communicate with him, it is overruled.
 {¶ 20} Mr. Owens's final argument in support of his first assignment of error is that his trial lawyer was deficient because he failed to reveal to the State that Mr. Owens's cousin claimed to be the owner of the drugs found in the apartment until the cousin testified at trial. This is an example of trial strategy. Trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." State v. Conway, 109 Ohio St. 3d 412, 2006-Ohio-2815, at ¶ 115. To the extent Mr. Owens's first assignment of error is based on the timing of the revelation that his cousin claimed to be the owner of the drugs found in the bedroom, it is overruled. Mr. Owens's first assignment of error is overruled.
 THE TRIAL COURT'S FAILURE TO HOLD A HEARING {¶ 21} Mr. Owens's second assignment of error is that the trial court incorrectly denied his petition for post-conviction relief without holding an evidentiary hearing. Section 2953.21(C) of the Ohio Revised Code provides that, "[b]efore granting a hearing, . . . the court shall determine whether there are substantive grounds for relief." As discussed in regard to Mr. Owens's first assignment of error, viewing the evidence most favorably to Mr. Owens, none of the arguments he presented in support of his petition for post-conviction relief entitled him to *Page 8 
relief. The trial court, therefore, did not err by failing to hold an evidentiary hearing before denying him relief.
 SUFFICIENCY OF TRIAL COURT'S FINDINGS AND CONCLUSIONS {¶ 22} Mr. Owens's third assignment of error is that the trial court's Journal Entry was not sufficient. The Ohio Supreme Court has held that Section 2953.21(C) requires findings that are "comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." State v. Calhoun, 86 Ohio St. 3d 279, 292
(1999). The trial court's Journal Entry is four pages long, provides the procedural history, reviews the applicable law, and contains findings of fact and conclusions of law. While it is true, as argued by Mr. Owens, that the trial court failed to make any findings regarding his lawyer's alleged failure to communicate with him, in Calhoun the Supreme Court determined that a trial court's findings of fact and conclusions of law were adequate even though they "did not address every argument raised by petitioner." Id. at 291 (emphasis in original). As discussed previously, Mr. Owens was not entitled to relief based on that argument, and the trial court's failure to specifically address it does not render its Journal Entry insufficient.
 {¶ 23} The trial court's Journal Entry in this case was sufficient. Mr. Owens's third assignment of error is overruled.
 CONCLUSION {¶ 24} Mr. Owens's assignments of error are overruled. The judgment of the Summit County Common Pleas Court is affirmed.
 Judgment affirmed. *Page 9 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
MOORE, P. J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1