NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1778
_____

UNITED STATES OF AMERICA

v.

LAMONT E. PAIGE a/k/a MONT


Lamont E. Paige,
          Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00121-002)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2013

Before:  AMBRO, FISHER and HARDIMAN, *Circuit Judges*.

(Filed: October 22, 2013  )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Lamont Paige appeals the order of the United States District Court for the Eastern District of Pennsylvania denying his motion to suppress evidence, and the Court's imposition of a 280-month prison sentence. For the reasons that follow, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On January 20, 2010, two masked men robbed the TruMark Federal Credit Union in Jenkintown, Pennsylvania, one of whom threatened employees and patrons with a gun. The robbers took money from the tellers' cash drawers, including two "dye packs" – strapped bundles of cash concealing devices that, when removed a certain distance from the bank entrance, detonate and spray a mixture of red dye and teargas. As the robbers left the Credit Union, the dye packs exploded. At trial, the Government presented evidence that Paige was one of the two robbers, including video surveillance tapes, eyewitness testimony, a dye-stained shoe, and DNA evidence.

The District Court held a pretrial hearing on Paige's motion to suppress the shoe, which the FBI lab determined was stained by chemicals consistent with those used in the Credit Union's dye packs. The shoe was a match to one worn by one of the robbers, as seen in a photograph taken from the bank's security video footage of the robbery, and was found in an apartment that had been occupied by Paige. FBI Special Agent Vito

2

Roselli testified that he and other agents had interviewed Paige's girlfriend, who told them she and Paige had lived together in an apartment at 557 Allengrove Street. According to the girlfriend, they had left that apartment because they were $3,000 behind on the rent and had received an eviction notice. She provided the FBI with the landlord's name and telephone number.

Special Agent Roselli confirmed the identity of the landlord by conducting a public records check. He made four or five "drive bys" of the apartment, looking for signs of activity, and checked the license plates on cars parked nearby to determine if their registration indicated a relationship to the apartment. Special Agent Roselli observed no activity at the apartment, nor were any of the cars associated with the property. An upstairs neighbor told him that she had not seen the car she knew to be associated with the apartment for several days, and that she had heard noises in the middle of the night consistent with people moving out. He contacted the landlord, and they met at the apartment on February 12, 2010. The landlord said he had evicted Paige, which was confirmed by a December 16, 2009 notice of eviction addressed to Paige at the 557 Allengrove address and a notice posted on the property, and said he was arranging to have the apartment cleaned out.

The landlord consented to a search of the apartment. When he attempted to unlock the front door, he found that his key did not work. The key worked in the back door, but an obstruction prevented it from opening, so Special Agent Roselli climbed in

3

through a window. Inside, he found the black shoe, a pair of pants, and mail addressed to Paige.

At the suppression hearing, Paige claimed he had discussed the rent issue with the landlord in January 2010, and had been given additional time to pay. He denied having been evicted and claimed not to have seen the notice. Paige also stated that he had not been in the apartment since the beginning of February 2010. The District Court concluded that the Government failed to show by clear and unequivocal evidence that Paige intended to abandon the apartment, but that the agents reasonably believed that the landlord had authority to consent to a search of the property. Accordingly, the District Court denied Paige's motion to suppress.

A jury convicted Paige of one count of armed bank robbery and aiding and abetting of the same, in violation of 18 U.S.C. §§ 2 and 2113(d), and the District Court conducted a sentencing hearing on March 22, 2011. The presentence report ("PSR") assigned a base offense level of 20. It then added two levels for taking property from a financial institution, U.S.S.G. § 2B3.1(b)(1), and five levels because a firearm was brandished during the robbery, *id.* § 2B3.1(b)(2)(C). Paige had ten criminal history points, placing him in criminal history category V.

The PSR also categorized Paige as a career offender based on two prior drug convictions: a May 1999 conviction related to drug crimes committed on April 29, 1998; and a June 1999 conviction for drug crimes committed on May 13, 1998. The District

4

Court held that these crimes constituted separate offenses under the Guidelines. Based on his career offender designation, Paige had a final offense level of 34 and a criminal history category of VI, resulting in an advisory Sentencing Guidelines range of 262-327 months' imprisonment, capped at 300 months because of the statutory maximum sentence for armed bank robbery. The District Court imposed a sentence of 280 months. This timely appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (citation omitted). We "review factual findings relevant to the Guidelines for clear error and . . . exercise plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007). We review the substantive reasonableness of the sentence imposed for an abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

III.

On appeal, Paige argues that the District Court erred in (A) denying his motion to suppress evidence, (B) treating him as a career offender, and (C) imposing a substantively unreasonable sentence. Each of these arguments fails.

A.

We first consider Paige's argument that he is entitled to a new trial because the jury heard evidence gained through an unconstitutional search of his home. The District Court concluded that the search of the apartment at 557 Allengrove Street, which led to the discovery of the black shoe stained with red dye, satisfied the Fourth Amendment's requirements because it was based on Special Agent Rosselli's reasonable belief that the landlord had authority to consent to the search. Supp. App. at 410. We agree.

While it is true that a landlord may not consent to a search of a tenant's apartment, *see Chapman v. United States*, 365 U.S. 610, 616-17 (1961), it is also true that when a person voluntarily abandons property, he no longer has an objectively reasonable expectation of privacy in the property, *see United States v. Harrison*, 689 F.3d 301, 307-08 (3d Cir. 2012); *see also Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of . . . abandoned property."). When an apartment is abandoned, authority to consent to a search reverts to the landlord. *United States v. Sledge*, 650 F.2d 1075, 1077 (9th Cir. 1981).

"A search is constitutional if it is based on reasonable belief that a third party had authority to consent." *Bolden v. Se. Pennsylvania Transp. Auth.*, 953 F.2d 807, 828 n.29 (3d Cir. 1991) (citation omitted). Special Agent Roselli reasonably believed that the landlord had authority to consent to the search, and therefore we need not determine whether he was mistaken in his factual conclusion that Paige had abandoned the apartment. *See Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990) ("Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably."). The landlord told Special Agent Roselli that he evicted Paige and his girlfriend and intended to clean out the apartment. Special Agent Roselli saw the landlord's December 16, 2009 notice of eviction and the notice posted at the apartment, which was consistent with his surveillance and his interviews of Paige's girlfriend and neighbor. Special Agent Roselli had a reasonable belief that the landlord had authority to consent to a search of the apartment, and therefore the District Court did not err in admitting into evidence the shoe seized during this search.

B.

We next consider whether the District Court erred in designating Paige a career offender under the Sentencing Guidelines. Our review is for "reasonableness," which the Supreme Court has crystallized into a two step inquiry: first, whether the District Court's sentencing decision was procedurally sound; and second, whether it was substantively

7

reasonable.  *Gall*, 552 U.S. at 51.  Ensuring the proper calculation of the Guidelines range falls under the procedural prong.  *United States v. Smalley*, 517 F.3d 208, 214 (3d Cir. 2008).

On April 29, 1998, Paige sold cocaine to an undercover police officer.  He pleaded guilty to possession with intent to distribute a controlled substance on May 13, 1999, and was sentenced on June 11, 1999 to a term of imprisonment exceeding one year and one month.  On May 13, 1998, officers of the Norristown, Pennsylvania police department observed Paige selling cocaine.  He was found guilty of possession with intent to distribute a controlled substance on June 8, 1999, and sentenced to a prison term exceeding one year and one month on September 30, 1999.

> The career offender designation applies if:
>
> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  Paige contests neither the age nor the crime of violence requirement.  Rather, he argues that the District Court incorrectly concluded that he had two qualifying prior convictions.

The Sentencing Guidelines construe the phrase "two prior felony convictions" to mean two felony convictions for either a crime of violence or a controlled substance offense, or any combination thereof, that occurred prior to the commission of the instant

8

offense of conviction, and that are counted separately under the provisions of § 4A1.1(a), (b), or (c). *Id.* § 4B1.2(c). The computation of criminal history points under § 4A1.1 is, in turn, governed by § 4A1.2, which provides that multiple prior sentences are to be counted separately if "the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." *Id.* § 4A1.2(a)(2). In the absence of an intervening arrest, the sentences are to be counted separately "*unless* (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.* (emphasis added).

The District Court properly counted Paige's two prior drug trafficking convictions separately for purposes of the career-offender designation. Paige does not argue that both offenses were charged in the same instrument, or that he was sentenced for both on the same day. Rather, he argues that the offenses should not be counted separately because there was no intervening arrest between the dates of conviction. In other words, because Paige was convicted for the April 29, 1998 offense on May 13, 1999, and was convicted for the May 13, 1998 drug offense on June 8, 1999, there was no intervening arrest between the May 13, 1999 and June 8, 1999 dates of conviction. Paige contends that the absence of such an arrest means that the offenses should not have been counted separately.

9

This argument entirely ignores the latter half of § 4A1.2(a)(2), which expressly states that when there is no intervening arrest, prior sentences are counted separately *unless* they arose from the same charging instrument, or were imposed on the same day. Neither is the case here. Paige committed drug trafficking offenses on two separate occasions, fourteen days apart, for which he was separately charged and sentenced. He therefore had two prior qualifying felony convictions, and the District Court did not err by classifying him as a career offender under the Sentencing Guidelines.

C.

Paige's final argument is that the 280-month sentence imposed by the District Court is substantively unreasonable. The "touchstone of reasonableness" is whether, on consideration of the record as a whole, the District Court meaningfully and rationally considered the factors identified in 18 U.S.C. § 3553(a). *Tomko*, 562 F.3d at 568 (citation omitted). "[W]e must give due deference to the district court's determination that the § 3553(a) factors, on a whole, justify the sentence." *Id.* (internal quotation marks and citation omitted). We may, but are not required to, apply a presumption of reasonableness to a sentence within the Guidelines range. *Gall*, 552 U.S. at 51.

The District Court's sentence of 280 months, within the Guidelines range of 262-300 months, was substantively reasonable. The District Court considered the nature and circumstances of the robbery, Paige's criminal history, the need to punish a serious offense and deter future criminal conduct, and the need to provide Paige with correctional

10

rehabilitation. Supp. App. at 424; *see also* 18 U.S.C. § 3553(a). The District Court noted that Paige's codefendant brandished a firearm during the robbery, and that two victims were emotionally traumatized and attended counseling as a result. Supp. App. at 425. Paige was designated a career offender and has an extensive criminal history of drug trafficking offenses, and although the instant offense was his first involving an overt act of violence, prior periods of incarceration failed to deter Paige from criminal conduct. The District Court concluded that Paige presents "a serious threat to the public safety and the community," and that a significant prison sentence within the Guidelines range was therefore warranted. *Id.* at 425-26. The District Court meaningfully and rationally considered the factors identified in § 3553(a), and did not abuse its discretion in sentencing Paige to a term of imprisonment of 280 months.

## IV.

For the reasons set forth above, we will affirm the order of the District Court denying Paige's motion to suppress, and affirm the Court's imposition of a 280-month prison sentence.